IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

THRIVENT FINANCIAL FOR
LUTHERANS,

      Appellant,

v.

STATE OF FLORIDA,
DEPARTMENT OF
FINANCIAL SERVICES,

      Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-5299

_____/

Opinion filed August 5, 2014.

An appeal from the Department of Financial Services.
Robert C. Kneip, Chief of Staff.

Timothy G. Schoenwalder of Blank & Meenan, P.A., Tallahassee, and Andrew B.
Kay of Cozen O'Connor, Washington, D.C., for Appellant.

Wendy L. Furman of Pett Furman, PL, Boca Raton, and Jason P. Gosselin and
Laura M. Zulick of Drinker Biddle & Reath LLT, Philadelphia, PA, for American
Council of Life Insurers, Amicus Curiae in support of Thrivent Financial for
Lutherans.

Richard T. Donelan, Jr., Chief Counsel, and Paul C. Stadler, Jr., Assistant General
Counsel, Tallahassee, for Appellee.

Steve Burgess, Insurance Consumer Advocate and Michael Kliner, Senior
Attorney, Office of the Insurance Consumer Advocate, Florida Department of
Financial Services, Amicus Curiae in support of Florida Department of Financial
Services.

WOLF, J.

Appellant, Thrivent Financial for Lutherans (Thrivent), appeals from a declaratory statement issued by the Department of Financial Services (DFS) interpreting section 717.107, Florida Statutes (2013). We find DFS' interpretation of section 717.107 is clearly erroneous because it ignores the plain language of the statute. Accordingly, we reverse.

## I. Relevant Statutes

Section 717.107, which is part of the Florida Disposition of Unclaimed Property Act, requires insurers to remit to DFS any life insurance funds that remain "unclaimed" for a certain period of time – referred to as the "dormancy period" – after the funds become "due and payable." DFS may impose penalties and charge interest on funds that are not reported and paid to DFS as required by chapter 717. See § 717.134, Fla. Stat. Section 717.107 states in relevant part:

> (1) Funds held or owing under any life or endowment insurance policy or annuity contract which has matured or terminated are presumed unclaimed if unclaimed for more than 5 years after the funds became **due and payable as established from the records of the insurance company** holding or owing the funds, but property described in paragraph (3)(b) is presumed unclaimed if such property is not claimed for more than 2 years. The amount presumed unclaimed shall include any amount due and payable under s. 627.4615.
>
> . . .
>
> (3) For purposes of this chapter, a life or endowment insurance policy or annuity contract not matured by actual proof of the death of the

2

insured or annuitant according to the records of the company <u>is deemed matured and the proceeds due and payable if</u>:

(a) The company <u>knows</u> that the insured or annuitant has died; or

(b)1. The <u>insured has attained, or would have attained if he or she were living, the limiting age</u> under the mortality table on which the reserve is based;

2. The policy was in force at the time the insured attained, or would have attained, the limiting age specified in subparagraph 1.; and

3. Neither the insured nor any other person appearing to have an interest in the policy within the preceding 2 years, according to the records of the company, has assigned, readjusted, or paid premiums on the policy; subjected the policy to a loan; corresponded in writing with the company concerning the policy; or otherwise indicated an interest as evidenced by a memorandum or other record on file prepared by an employee of the company.

. . .

(6) Notwithstanding any other provision of law, if the company <u>learns</u> of the death of the insured or annuitant and the <u>beneficiary has not communicated</u> with the insurer within 4 months after the death, the company <u>shall take reasonable steps</u> to pay the proceeds to the beneficiary.

(Emphasis added). Because section 717.107 references the time at which proceeds become due and payable "as established from the records of the insurance company," the parties also rely on section 627.461, Florida Statutes (2013), which sets forth requirements for insurance contracts.

Every contract shall provide that, when <u>a policy becomes a claim by the death of the insured</u>, <u>settlement shall be made upon receipt of due proof of death and surrender of the policy</u>.

§ 627.461, Fla. Stat. (2013) (emphasis added).

3

## II. Declaratory Statement

Thrivent sought a declaratory statement that life insurance funds become "due and payable as established from the records of the insurance company" under subsection 717.107(1) when the insurer receives proof of the insured's death and surrender of the policy, as provided in section 627.461.

DFS issued a declaratory statement finding that life insurance funds are "due and payable" under subsection 717.107(1) upon the death of the insured, at which time the dormancy period is automatically triggered. DFS further found that section 717.107 created an affirmative duty on insurers to use due diligence in searching databases, such as the Social Security Administration's Death Master File, in order to determine if any of its insureds has died.

## III. Analysis

"Any substantially affected person may seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision, or of any rule or order of the agency, as it applies to the petitioner's particular set of circumstances." § 120.565(1), Fla. Stat. (2013). "[A]n appellate court may reverse a declaratory statement only if the agency's interpretation of the law is clearly erroneous." Regal Kitchens, Inc. v. Fla. Dep't of Revenue, 641 So. 2d 158, 162 (Fla. 1st DCA 1994). "[W]here the administrative ruling or policy is contrary to the plain and unequivocal language being interpreted, the ruling or policy is clearly

erroneous." <u>Eager v. Fla. Keys Aqueduct Auth.</u>, 580 So. 2d 771, 772 (Fla. 3d DCA 1991). We find that DFS' interpretation of section 717.107 is contrary to the plain language of the statute and, therefore, is clearly erroneous.

The plain language of subsection 717.107(1) states that life insurance funds "become due and payable as established by the records of the insurance company." Section 627.461 states that payment "shall be made upon receipt of due proof of death and surrender of the policy." Therefore, the records of the insurance company do not establish funds as "due and payable" under subsection 717.107(1) until the insurer receives proof of death and surrender of the policy.

Alternatively, subsection 717.107(3) provides that contracts "not matured by actual proof of the death" as contemplated by subsection 717.107(1) are "deemed matured and the proceeds due and payable" if the insurer either "knows that the insured . . . has died," or if the insured "has attained, or would have attained if he or she were living, the limiting age."

Nothing in the plain language of section 717.107 supports DFS' interpretation that funds become "due and payable" at the moment the insured dies. Further, if life insurance funds were automatically "due and payable" at the time of death under subsection 717.107(1), that would render meaningless subsection (3), which provides alternate means by which a contract "not matured by actual proof of the death" may be "deemed matured and the proceeds due and payable." <u>See</u>

Hechtman v. Nations Title Ins., 840 So. 2d 993, 996 (Fla. 2003) ("[W]ords in a statute should not be construed as mere surplusage."); Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992) ("Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.") (emphasis omitted).

DFS relies on section 717.102, Florida Statutes, to support its interpretation that life insurance is due and payable at the time of death, even if no claim is made. Subsection 717.102(2) states that "[p]roperty is payable or distributable for the purpose of this chapter notwithstanding the owner's failure to make demand or to present any instrument or document required to receive payment." Section 717.102 is titled a "general rule," but that general rule does not control over section 717.107, which deals specifically with "[f]unds owing under life insurance policies." See Murray v. Mariner Health, 994 So. 2d 1051, 1061 (Fla. 2008) ("[W]here two statutory provisions are in conflict, the specific provision controls the general provision.").

Further, contrary to DFS' assertion, this court's interpretation of section 717.107 does not require that a claim be made before funds can be considered "unclaimed." Subsection 717.107(1) states that if a claim is made, any funds that were not paid to the beneficiary after 5 years are deemed "unclaimed." Thrivent explained at oral argument that this situation can occur if a beneficiary cannot be

6

located. Or, subsection 717.107(3) provides instances in which funds are deemed unclaimed where no claim was made.

Finally, DFS argues this court should impose an affirmative duty on insurers to search death records in order to ascertain whether any insured has died. At oral argument, DFS indicated that insurers could fulfill this duty by searching databases such as Google, LexisNexis, or the Death Master File. However, nothing in the plain language of section 717.107 imposes an affirmative duty on insurers to search these death records. DFS asks this court to rewrite the statute based on policy considerations. However, "this Court may not rewrite statutes contrary to their plain language." Hawkins v. Ford Motor Co., 748 So. 2d 993, 1000 (Fla. 1999). "[P]olicy concerns . . . must be addressed by the Legislature." Id.

For the reasons discussed above, we find DFS' interpretation of section 717.107 is clearly erroneous. Life insurance funds become "due and payable" under subsection 717.107(1) at the time the insurer receives proof of death and surrender of the policy as contemplated by section 627.461; or, funds become "due and payable" under subsection 717.107(3) when the insurer knows that the insured has died, or when the insured attained or would have attained the limiting age. Therefore, we REVERSE.

ROWE, J., and PARKER, GREGORY S., ASSOCIATE JUDGE, CONCUR.